**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**DUVAL FRANCOIS,**

                **Plaintiff,**

   -against-

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                **Defendant.**
-------------------------------------------------------------x

**09 Civ. 6625 (HB)**

**OPINION & ORDER**

**Hon. Harold Baer, Jr., District Judge:**[*]

    Duval Francois ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to challenge the final determination by the Commissioner of Social Security (the "Commissioner") that he was not disabled within the meaning of the Social Security Act (the "Act") as a result of an injury suffered on March 12, 1994 and hence not eligible for disability insurance benefits ("DIB"). Both the Commissioner and Plaintiff move for judgment on the pleadings pursuant to Rule 12(c). FED. R. CIV. P. 12(c). For the following reasons, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the case is dismissed.

## I.    BACKGROUND

### A.    PLAINTIFF'S HISTORY

    Plaintiff was born January 16, 1961 and is a high school graduate. Transcript of Administrative Record of the Social Security Administration ("Tr.") at 28–29, 56, 435–36, 602–03. At the time of the injury on March 12, 1994, he was employed as a Maintainer's Helper for the New York City Transit Authority ("Transit Authority"). Tr. at 29–30, 102, 436. His principal duties involved the inspection and fueling of buses. Tr. at 30, 436, 604–06. Prior to this position, he was a Cleaner for the Transit Authority from November 1987 until June 1990, at which time he was offered the Maintainer's Helper position. He was also a Cleaner for the New York City Police Department from June 1981 until May 1985. Tr. at 102.

    Plaintiff's injury on March 12, 1994 was his third workplace injury. He suffered his first injury in October 1990 in a fall that damaged his right knee. Tr. at 104, 108. After treatment,

---

[*] Timothy Fox, an intern in my Chambers for the 2009-10 academic year and a third-year law student at St. John's University School of Law, provided substantial assistance in the research and drafting of this opinion.

which included a knee surgery, Plaintiff returned to work in the spring of 1993. He suffered a second slip and fall in September 1993 in which he aggravated his right knee again and hurt his right shoulder. Tr. at 32, 105. While on restricted duty from the second accident, Plaintiff suffered the alleged disabling injury to his right knee on March 12, 1994. Tr. at 106, 443–44. Plaintiff indicated to his treating physician, Dr. Richard Memoli that his knee "buckled" causing him to fall and to injure his knee and back. Tr. at 163. Plaintiff has been under the care of Dr. Memoli since October 29, 1990, except for a short period between June and September 1993. Tr. at 104–07, 614. Following the injury on March 12, 1994, Plaintiff supported himself with worker's compensation benefits. Tr. at 603. These benefits continued until the New York City Employees' Retirement System retired Plaintiff, effective October 12, 1996, for "disability retirement pursuant to Section 605 of the Retirement and Social Security Law." Tr. at 131.

**B.     PROCEDURAL HISTORY**

Plaintiff applied for DIB for his March 1994 knee injury on March 26, 1997.[1] Plaintiff's application was initially denied on May 30, 1997 and again, upon reconsideration, on January 30, 1998. Plaintiff's present appeal, for which he is now proceeding *pro se*, challenges the August 17, 2007 decision of Administrative Law Judge Katherine Edgell ("ALJ Edgell"), which found that he had the residual functional capacity ("RFC")[2] to perform at least sedentary work with the option of alternating between sitting and standing on an as-needed basis. Prior to ALJ Edgell's decision, Plaintiff received two similarly unfavorable decisions rendered by Administrative Law Judge Louis V. Zamora ("ALJ Zamora"). Both decisions, the first on February 24, 1999 and the second on June 24, 2002, were denied review by the Social Security Administration Appeals Council ("Appeals Council") and then were appealed by Plaintiff to this Court. *See Francois v. Apfel*, 00 Civ. 2664 (DAB); *Francois v. Barnhart*, 03 Civ. 4946(HB). By Stipulation and Order, dated April 12, 2001 and December 23, 2003 respectively, each matter was remanded for additional administrative proceedings. The Plaintiff filed the present action on July 27, 2009 after the Appeals Council declined review of ALJ Edgell's decision on May 2, 2009. At PreTrial Conference on November 4, 2009, the parties agreed, as memorialized by Order of this Court dated November 11, 2009, to have this appeal decided as a Motion for Judgment on the Pleadings.

---

[1] Plaintiff had made two prior applications for DIB in regard to this particular injury, the first on October 12, 1994 and the second on January 26, 1996. As with the current application, both were denied at the initial and reconsideration stages. No appeals were taken.
[2] "Residual functional capacity" is what an individual can capably still do despite restrictions resulting from physical and mental impairments. 20 C.F.R. § 416.945(a).

2

### C. RELEVANT EVIDENCE IN THE RECORD

#### 1. Medical Opinions[3]

##### a. Dr. Richard Memoli (Treating Source)

Dr. Richard Memoli began treating Plaintiff in October 1990 following a workplace injury. Tr. at 104, 615. Plaintiff suffered a second injury in September 1993 and sought additional treatment from Dr. Memoli. Plaintiff was being treated for this second injury at the time of the March 12, 1994 injury. He has since remained in Dr. Memoli's care. Tr. at 106, 614. As a result of his injuries, Plaintiff has undergone three surgeries to his right knee; each was performed by Dr. Memoli. On August 22, 1991, following Plaintiff's initial knee injury, Dr. Memoli performed a right knee arthroscopy with arthrotomy and medial meniscectomy on Plaintiff. Tr. at 137–38. To correct a right medial meniscus tear that resulted from the March 12, 1994 injury, Dr. Memoli performed a second surgery on Plaintiff's right knee on July 7, 1994. Tr. at 396–97. Plaintiff underwent a third operation on November 9, 1995 to repair a partial tear of the right anterior cruciate ligament. Tr. at 417–18. Operative notes indicate that each procedure was well tolerated. Tr. at 137–38, 396–97, 417–18.

Dr. Memoli's examination reports from April 29, 1996 until October 16, 1997 show regular appointments approximately every six to eight weeks. These reports indicate that Plaintiff suffered from a moderate partial disability and that either he experienced no change or saw an improvement in his condition. Tr. at 189–202. Importantly, progress notes completed by Dr. Memoli, dated June 25, 1996 and April 15, 1997, state that, while Plaintiff should continue physical therapy and use of medication, he could return to light duty work. Tr. at 191, 197. However, in a May 1, 1997 report prepared for the New York State Department of Social Services Office of Disability Determinations, Dr. Memoli opined that Plaintiff was "disabled from work." Tr. at 104–07. At the time of the report, Plaintiff was under a course of treatment involving home heat, exercise and a prescription for Naprosyn.[4] *Id.* On September 24, 1998, Dr. Memoli completed a questionnaire[5] in which he stated that, among certain other restrictions, Plaintiff was

---

[3] The record contains numerous pages of medical evidence; however, here I will refer only to those medical opinions that are relevant to this appeal. I have indicated the opinions as either "treating source" or "non-treating source" as those terms are defined by the Commissioner's regulations. *See* 20 C.F.R. § 404.1502.

[4] Naproxen is the generic name for Naprosyn, which belongs to a class of drugs called nonsteroidal anti-inflammatory drugs. Drugs in this class, which includes, among others, ibuprofen, are used to treat mild to moderate pain and inflammation. Aleve is a brand name for Naproxen. *See* MedicineNet.com, Naprosyn, http://www.medicinenet.com/naproxen/article.htm (last visited April 18, 2010).

[5] The SSA questionnaire was entitled "Medical Assessment of Ability to do Work-Related Activities (Physical)."

3

restricted to standing/walking for up to one hour and sitting for a total of one to two hours during a standard eight-hour day. Tr. at 158–59. While still indicating that Plaintiff suffers a moderate partial disability and that his condition remains unchanged, examination reports dated December 23, 1997 through June 29, 1998 stated that the condition is permanent and ongoing. Tr. at 204–212. In March 2005, at the request of Plaintiff's counsel, Dr. Memoli completed a treatment questionnaire that repeated the opined standing/walking and sitting restrictions indicated in the September 24, 1998 questionnaire, and further indicated that the Plaintiff's condition was "permanent and on-going." Tr. at 572–79.

### b. Dr. Mario Mancheno (Non-Treating Source)

Dr. Mario Mancheno performed a total of three consultative physical examinations of Plaintiff. The report of the first examination on December 21, 1994 indicated that while Plaintiff walks with a cane favoring the right leg, he maintained a stable gait and did not need the cane for ambulation. Tr. at 403–05. Plaintiff reported constant pain in the right knee and difficulty moving in the morning hours. He also indicated that activities involving pushing and pulling, lifting or carrying heavy objects, navigating stairs, squatting, or standing for extended periods caused increased levels of pain. *Id.* Based on a physical examination, observation of Plaintiff, and accepted diagnostic testing, Dr. Mancheno opined that Plaintiff had no sitting restrictions and moderate limitations in pushing/pulling, standing/walking, and lifting/carrying. *Id.*

Dr. Mancheno performed his second evaluation of Plaintiff on May 16, 1997. Tr. at 108–11. The report indicated that Plaintiff maintained good posture, he walked with a steady gait and a limp that favored his right leg, and again noted that Plaintiff did not need a cane for sustained ambulation. *Id.* Plaintiff reported stiffness, swelling and constant pain in the right knee and described the pain as aching and throbbing. Plaintiff indicated that the pain was relieved by administration of Naprosyn and rest. Further, Plaintiff acknowledged that he did his own shopping and cleaning. *Id.* Dr. Mancheno opined that Plaintiff had mild sitting restrictions and moderate limitations in pushing/pulling, standing/walking, and lifting/carrying. *Id.*

Dr. Mancheno performed a third examination of Plaintiff on January 12, 1998. Tr. at 120–22. The report is largely consistent with Dr. Mancheno's May 16, 1997 report. Plaintiff reported similar symptoms, and indicated that he now used Tylenol for pain relief. Based on the result of physical examination, observation of Plaintiff, and medically accepted diagnostic testing, Dr. Mancheno opined that Plaintiff had no sitting restrictions and moderate limitations in pushing/pulling, standing/walking, and lifting/carrying. *Id.*

### c. Dr. Jeffrey Schwartz (Non-Treating Source)

Dr. Jeffrey Schwartz performed a consultative evaluation of Plaintiff on March 25, 1996. Tr. at 422–24. Dr. Schwartz's report indicated that Plaintiff did not need assistance when entering the room, dressing and undressing, or mounting the examination table. *Id.* Dr. Schwartz noted that Plaintiff used an immobilizer for the right knee and walked with a cane. *Id.* Plaintiff reported that his daily activities included cooking, cleaning, and socializing. *Id.* Based on the result of physical examination, observation of Plaintiff, and medically accepted diagnostic testing, Dr. Schwartz opined that Plaintiff could sit all day, stand for four to six hours in a workday, and could perform repetitive tasks from a seated position. *Id.*

### 2. Plaintiff's Statements

At each of the three administrative hearings,[6] Plaintiff testified as to the extent of the pain and impairments he suffers as a result of the injury to his knee. Plaintiff testified that he experienced pain and swelling in his feet and legs and took medications such as Naproxen, Extra Strength Tylenol or Aleve. Tr. at 30–31, 437–38.[7] Plaintiff also testified that he attempted to walk daily and received physical therapy that "seems to me to be helping." Tr. at 33, 445.[8] Plaintiff claimed that the constant pain in his right knee, in addition to swelling of the legs and feet, is what prevented him from returning to work. Tr. at 30, 437. Plaintiff further explained that the March 1994 injury aggravated prior injuries suffered in 1990 and 1993. In contrast to the March 1994 injury, Plaintiff returned to work after each of the previous injuries. Tr. at 444. Plaintiff stated that, while he was prescribed a cane, he used the cane mostly for balance. Tr. at 617.

In regard to his daily activities and lifestyle, Plaintiff indicated that he spent time playing the piano and guitar. Tr. at 33. He stated that he had no real difficulties dressing himself. Tr. at 34, 446. He also testified that he was able, in large part, to care for himself and his apartment. Tr. at 446. He indicated that he only really needed help with the "heavy stuff." Tr. at 619–20. While generally he did not prepare his meals, he did often climb up and down a flight of stairs from his apartment to eat with the family with whom he lived. Tr. at 447, 619. During the period immediately following his injuries and resulting surgeries, Plaintiff either used public

---

[6] Two hearings were held before ALJ Zamora, the first on August 31, 1998 and the second on May 24, 2002. A third hearing was held before ALJ Edgell on July 10, 2007. Plaintiff was represented by counsel at each of the hearings.
[7] Notably, Plaintiff indicated that he was prescribed pain medication and muscle relaxants, but stopped these medications because it upset his stomach. Tr. at 612–13.
[8] At the first hearing, Plaintiff noted that he was forced to discontinue physical therapy because the City denied coverage, yet at Dr. Memoli's direction he continued to exercise and walked for about 20 minutes a day. Tr. at 33.

transportation or depended on his upstairs neighbor to drive him from place to place, including his doctors appointments. However, in 1997, following the initial recovery period from his surgeries, Plaintiff resumed driving himself. Tr. at 435, 440, 603.

### C.     ALJ EDGELL'S DECISION

After consideration of all the evidence in the record and the testimony at the July 10, 2007 hearing, ALJ Edgell rendered a decision adverse to the Plaintiff. Applying the required five-step sequential analysis as set forth in the Commissioner's regulations, 20 CFR § 404.1520(b), she concluded that Plaintiff was not disabled within the meaning of the Act during the relevant period.[9] Specifically, she found that he possessed a residual functional capacity to perform at least sedentary work, 20 C.F.R. § 404.1567(a) (defining sedentary work as work involving restricted lifting requirements and work that, while primarily conducted while sitting, may require occasional periods of standing or walking), provided the Plaintiff had the option, on an as-needed basis, of alternating between sitting and standing.  Given Plaintiff's RFC and based on the testimony of the vocational expert, who described a variety of different types of employment that Francois could still perform,  ALJ Edgell determined that there existed jobs in significant numbers in the national economy that Plaintiff would have been able to perform. As such, Plaintiff was not disabled within the meaning of the Act because he could have obtained gainful employment despite his injury.

### D.     PLAINTIFF'S CONTENTIONS

Plaintiff contends the ALJ erred in her judgment. First, plaintiff asserts that because he received a disability retirement from his employer he is *per se* disabled and therefore eligible for DIB. Second, he claims that ALJ Edgell placed insufficient weight on the medical assessment of his treating physician. Third, he argues that the ALJ's assessment of Plaintiff's RFC was incorrect because she failed to account for Plaintiff's use of a cane for ambulation, use of pain medication, subjective allegations of pain, and the finding from his employer that he was disabled.[10] Based on these arguments, Plaintiff seeks remand of the case for determination of benefits.

---

[9] Plaintiff does not contest the relevant period of inquiry as beginning on March 12, 1994, the alleged onset date of disability, and ending on December 31, 1999, the date when Plaintiff last met the insured status requirements of the Act. *See* 20 C.F.R. §§ 404.130, 404.131.

[10] In his motion, Plaintiff also argues that he was "obese" and that his obesity was so severe that it entitled him to disability benefits under the Listing of Impairments 9.09A, 20 C.F.R. § 404, Subpart P, Appx 1. Plaintiff's statements regarding his weight contradict both the medical evidence in the record and Plaintiff's own testimony. In his brief, Plaintiff states that he was 320 pounds at the time of his 1991 surgery; however, in his testimony he indicated he was

6

## II.     DISCUSSION

### A.     STANDARD OF REVIEW

A court reviews the administrative record to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court is not to weigh evidence *de novo* nor substitute its judgment for that of the Commissioner. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Rodriquez v. Astrue*, No. 07 Civ. 3309(HB), 2008 U.S. Dist. LEXIS 39108, at *24 (S.D.N.Y. May 15, 2008). While the Commissioner's findings of fact, if supported by substantial evidence, are determinative, an ALJ's incorrect application of the law is a basis for reversal. *See Vella v. Astrue,* 634 F. Supp. 2d 410, 416 (S.D.N.Y. 2009).

### B.     ANALYSIS

#### 1.     Plaintiff's Disability Retirement is Not Conclusive Evidence of his Disability

Plaintiff's first contention of error, that the disability retirement from his employer is conclusive on the issue of disability, may be quickly rejected. The determination of disability is expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1504. The regulations are clear that a determination by any other source, including another government entity like Plaintiff's employer, is not binding on the Commissioner. *Id.* ("a determination made by another agency that you are disabled or blind is not binding on us"); *see, e.g.*, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work – [is] reserved to the Commissioner.") (internal quotation omitted); *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 569 (S.D.N.Y. 2009) (approval of ALJ's notation that a finding of disability by another government

---

"around 208 [pounds]," Tr. at 443. Further, his weight as indicated in Dr. Mancheno's May 16, 1997 report was 280 pounds. Yet, even if true, the argument is moot. During the pendency of Plaintiff's case, the Commissioner determined that obesity, while certainly a consideration, was not such a limitation that necessarily prevents a person from working and thus promulgated a rule deleting the obesity listing. Furthermore, the Commissioner applied the new ruling retroactively to any pending matter. *See* 64 F.R. 46122 (1999); SSR 02-1p ("The final rules deleting [the obesity listing] apply to claims that were filed before October 25, 1999, and that were awaiting an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court."). Plaintiff did not maintain this argument in his reply.

agency is not based on social security law and thus not binding on the Commissioner).  Nor is the Commissioner bound by a physician's opinion that a claimant is disabled.  *See* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Lamorey v. Barnhart*, 158 Fed. Appx. 361, 362 (2d Cir. 2006) ("[T]he disability opinion of a treating physician or psychologist is not binding on the Commissioner[.]").  The Commissioner is not required, nor even necessarily permitted, to accept any single opinion, even that of a treating physician, as dispositive on the determination of disability.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

Plaintiff argues that because he received a disability retirement from his employer during the insured period, he was conclusively determined to be "disabled" and therefore entitled to DIB.  However, Plaintiff's employer's decision to grant him a disability retirement was based on the employer's standards, not those under the Act, and, thus, was not binding on the Commissioner.  Accordingly, it does not provide this Court any ground to reverse the Commissioner's determination.

### 2.     ALJ Edgell Correctly Applied the Treating Physician Rule

Plaintiff's second contention of error, that ALJ Edgell failed to give controlling weight to the medical opinion of his Plaintiff's treating physician, must also be rejected.  The Commissioner's regulations provide that the ALJ is to give "controlling weight" to the opinion of a treating physician when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence* in [the] case record."  20 C.F.R. § 404.1527(d)(2) (emphasis added); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").  In the event the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must give "good reasons" for the weight she ultimately gives to the physician's opinion.  *See* § 404.1527(d)(2); *Halloran*, 362 F.3d at 32–33.  While the ALJ must consider the treating physician's opinion in light of other proffered medical evidence, no "special significance" will be given to the opinion of a treating physician on the dispositive determinations of disability and RFC, as they are reserved to the Commissioner.  *See* § 404.1527(e)(3); *Snell*, 177 F.3d at 133 ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to

whether those data indicate disability … A treating physician's statement that the claimant is disabled cannot itself be determinative.").

While he does not point to any specific factual determination in the record, Plaintiff asserts that ALJ Edgell failed to give controlling weight to the opinion of Dr. Memoli.  However, ALJ Edgell properly declined to do so, because she found Dr. Memoli's opinion to be inconsistent with the objective evidence, including the opinions of Drs. Mancheno and Schwartz, and also internally inconsistent.  Dr. Memoli's conclusions regarding Plaintiff's lack of significant RFC in his September 1998 report contradict the assessments made by both Dr. Mancheno and Dr. Schwartz, which determined that he suffered from either mild or no sitting restrictions even though Plaintiff had moderate limitations in lifting/carrying, standing/walking, and pushing/pulling.  Furthermore, Plaintiff's own statements about his activities that he reported to Dr. Mancheno and Dr. Schwartz, and his testimony at the administrative hearings, do not entirely support the conclusions made by Dr. Memoli in the September 1998 report.  Plaintiff conceded, *inter alia*, that he could dress himself with no difficulty, traverse a flight of stairs daily to eat with the family upstairs, maintain his apartment, and, at least since 1997, drive himself from place to place.  Perhaps most damaging, Dr. Memoli's examination reports up and through April 1997, a full three years after the injury, regularly indicated that he suffered from only a partial permanent disability and that Plaintiff could return to light duty work.

Based on this record, it was reasonable for ALJ Edgell to conclude that Dr. Memoli's opinion was inconsistent with the substantial, well-supported medical evidence from other sources, and was not entitled to controlling weight.  ALJ Edgell noted in her decision that she attempted after the July 10, 2007 hearing to contact Dr. Memoli in order to provide him an opportunity to explain his notations that Plaintiff could resume "light-duty work."  Her attempts proved unsuccessful and she closed the record.  Finally, it is worth noting that the ALJ provided extensive detail of the medical evidence she considered and the reasons she declined to give Dr. Memoli's opinion controlling weight.  There is no error here.

### 3. The Commissioner's Decision is Supported by Substantial Evidence

Plaintiff's final claim, that the ALJ failed to consider Plaintiff's use of a cane for ambulation, use of pain medication, and subjective allegations of pain, is also without merit.[11] First, contrary to Plaintiff's understanding, the relevant question is not whether ALJ Edgell

---

[11] Plaintiff also lists the disability determination from his employer among this list of insufficiently considered facts. However, as indicated above, his employer's conclusion plays no role in the Commissioner's determination of Plaintiff's disability.

9

considered any particular piece of evidence, but whether her determination was supported by substantial evidence in the record. *See Barringer v. Commissioner of Social Security*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) ("The ALJ was not required to mention or discuss every single piece of evidence in the record.") (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *Rebull v. Massanari*, 240 F. Supp. 2d 265, 272 n.4 (S.D.N.Y. 2002) (explaining that the record need only provide a reviewing court an adequate basis to understand the rationale of the ALJ); *cf. Messina v. Astrue*, No. 09 Civ. 2509 (SAS), 2009 U.S. Dist. LEXIS 118831, at *25 (S.D.N.Y. Dec. 21, 2009) ("Even if the ALJ failed to consider Helen Messina's work record as a factor in his credibility determination, it is harmless error, as substantial evidence in the record supports the ALJ's credibility assessment."). Here, the ALJ's conclusion that Plaintiff could have returned to work is supported by substantial evidence in the record. However, to explain further how the ALJ's decision was properly supported, I consider briefly each of the Plaintiff's assertions.

A claimant's allegations of pain may not be, by themselves, conclusive evidence of disability. *See* 42 U.S.C. § 423(d)(5)(A). The statute requires, in short, that there must be medical evidence that shows the existence of an impairment and that the impairment can reasonably be expected to produce the alleged pain or other symptoms. *Id.*[12] If such an impairment is found, then the Commissioner must determine how, if at all, the intensity and persistence of the resulting symptoms affect the claimant's capacity to work. *See* 20 C.F.R. § 404.1529(c)(1); *Miller v. Astrue*, 538 F. Supp. 2d 641, 652 (S.D.N.Y. 2008). The Commissioner is not required to accept a claimant's contentions as to the extent of his symptoms when they are inconsistent with the evidence in the record. *See* 20 C.F.R. § 404.1529(c)(4); *see Miller*, 538 F. Supp. 2d at 652 (indicating substantial evidence supported ALJ's adverse determination on claimant's credibility); *see also Messina*, 2009 U.S. Dist. LEXIS 118831, at *24–25 (crediting ALJ's determination that claimant's statements about her daily activities were inconsistent with her assertions regarding the degree of impairment she suffered).

---

[12] "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability." 42 U.S.C § 423(d)(5)(A) (2000).

Plaintiff's claim that ALJ Edgell failed to consider his allegations of pain and use of pain medication is belied by the record. Plaintiff testified that he was prevented from returning to work because he experienced severe pain and swelling in his feet and legs as a result of his injury. While ALJ Edgell did find Plaintiff's impairments could reasonably produce the symptoms alleged, she did not find that his testimony to be "entirely credible." Tr. at 483. In reaching her conclusion, she noted that the evidence showed that Plaintiff did not require narcotic pain agents and that Plaintiff's pain was managed with over the counter medications such as Aleve. Tr. at 482. Plaintiff also argues that ALJ Edgell failed to address the fact that he used a cane to walk. In fact, she does note in her review of the medical evidence the observations by Dr. Mancheno that Plaintiff could walk without the use of the cane, and specifically considers the use of a cane at other points in the transcript as well.

### III. CONCLUSION

For the foregoing reasons, ALJ Edgell properly applied the applicable legal standards and her determination that Plaintiff is not disabled is supported by substantial evidence. Therefore, the Commissioner's motion for judgment on the pleadings is granted.

The Clerk of the Court is instructed to close these motions and to close this case and remove it from my docket.

**SO ORDERED.**
June 19, 2010
New York, New York

U.S.D.J.

11